UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OREGON POTATO COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SEVEN STARS FRUIT COMPANY, LLC,<br><br>Defendant. | CASE NO. C12-0931JLR<br><br>ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER |

## I.  INTRODUCTION

This matter is before the court on Plaintiff Oregon Potato Company's ("OPC") motion for a temporary restraining order ("TRO") and preliminary injunction. (Mot. (Dkt. # 5).) The court held a hearing by telephone on June 18, 2012, and all parties were represented by counsel and present for the hearing. The court has considered the motion and all documents filed in support and opposition thereto, including: (1) OPC's motion for a TRO and preliminary injunction (Dkt. # 5); (2) the declaration of Diana Evens (Dkt.

ORDER- 1

# 5-1), and all exhibits and attachments thereto; (3) the declaration of Frank Tiegs (Dkt. # 5-2), and all exhibits and attachments thereto; (4) the declaration of Crane Bergdahl (Dkt. # 5-3), and all exhibits and attachments thereto; (5) OPC's complaint (Dkt. # 1); (6) the responsive memorandum of Defendants Seven Stars Fruit Company, LLC and Monte Maberry (Dkt. # 6); and (7) OPC's reply memorandum (Dkt. # 8). Having also considered the oral arguments of counsel and the relevant law, and being fully advised, the court GRANTS OPC's motion for a TRO.

## II.  BACKGROUND

Between November 2011 and May 2012, OPC sold and delivered blueberries and raspberries to Seven Stars, shipping the berries according to Seven Star's instructions either to Seven Stars' cold storage in Lynden, Washington (where Seven Stars is headquartered) or to specific customers designated by Seven Stars. (Compl. (Dkt. # 1) ¶ 2.4; Evens Decl. (Dkt. # 5-1) ¶ 3.) During this period of time, OPC shipped $2,418,322.30 worth of berries to Seven Stars. (Evens Decl. ¶ 3; *see* Tiegs Decl. (Dkt. # 5-2) ¶ 2.) Seven Stars agreed to pay OPC for the berries. (Compl. ¶ 2.4.)

OPC sent invoices to Seven Stars for each shipment of berries. (*Id*. ¶ 2.6.) The invoices specify that payment is to be made within 30 days of the "B/L Date," or the bill of lading date. (*See* Evens Decl. ¶ 4 & Ex. A.) In each instance, OPC's invoice to Seven Stars bears the same date as the bill of lading. (*See id*. Ex. A.)

When OPC did not receive payment, Ms. Diana Evens, the accounts receivables manager of OPC, Mr. Frank Tiegs, the President of OPC, and others began contacting Mr. Monte Maberry, the owner and manager of Seven Stars. (*Id.* ¶ 5; Tiegs Decl. ¶¶ 3-5.)

Mr. Maberry assured OPC staff that payment from Seven Stars would be forthcoming. (Evens Decl. ¶ 5; Tiegs Decl. ¶ 5.)

OPC received partial payment from Seven Stars with respect to only one of its invoices during this time period. (Evens Decl. ¶ 3; Tiegs Decl. ¶ 6.) On March 9, 2012, OPC received a check from Seven Stars in the amount of $695,257.00, but it was returned by OPC's bank when Seven Stars stopped payment on the check before the funds were transferred. (*See* Tiegs Decl. ¶ 5.) Then, on March 15, 2012, OPC received a $300,000.00 payment by wire transfer, and on March 20, 2012, OPC received another $100,000.00 payment by wire transfer from Seven Stars. (*Id.* ¶ 6.) Seven Stars made these two partial payments with respect to OPC's Invoice No. 1139042, which is for a total of $509,373.00 and is dated December 12, 2011. (*Id.*) In addition, at oral argument, counsel for both parties represented that Seven Stars made an additional payment to OPC on June 15, 2012 of $40,000.00. Seven Stars has made no other payments with respect to OPC's invoices. (*Id.*) Thus, to date, Seven Stars has failed to remit payment to OPC for outstanding invoices totaling $1,978,322,30. (*See* Evens Decl. ¶ 3 & Ex. A (attaching unpaid invoices).)

OPC's accounts receivable with Seven Stars date back seven months. (*Id.* ¶ 9.) OPC has contacted some of Seven Star's customers who have advised that they have paid for the delivery of berries shipped to them from OPC on Seven Stars' account. (*Id.*) OPC, nevertheless, has not received payment on those shipments from Seven Stars. (*Id.*)

OPC brought the present action against Seven Stars under the Perishable Agricultural Products Act ("PACA"), 7 U.S.C. § 499e(c)(5). (*See generally* Compl.)

After the complaint in this action was filed, Defendants appeared by counsel. (Not. of App. (Dkt. # 3).) The parties entered into negotiations to resolve the matter without further litigation and without necessitating the filing of a motion for a TRO and preliminary injunction by OPC, and Seven Stars executed a settlement agreement. (Bergdahl Decl. (Dkt. # 5-3) ¶¶ 4-11.) Seven Stars, however, failed to timely follow through with a payment of $400,000 as agreed. (*Id.* ¶¶ 12-13.)

The court is aware of at least one other PACA complaint that has been filed against Seven Stars within approximately the past month. (*See Fruitrade Int'l, Inc. v. Seven Stars Fruit Co., et al.*, No. C12-0815JLR (W.D. Wash.).) On May 21, 2012, the court issued a TRO against Seven Stars in that matter as well. (*Id.* at Dkt. # 18.)

### III.  ANALYSIS

The court is authorized to issue this TRO by Federal Rule of Civil Procedure 65(b). *See* Fed. R. Civ. P. 65(b). To be entitled to a TRO, OPC must show: (1) a likelihood of success on the merits; (2) that irreparable harm is likely, not just possible, if the TRO is not granted; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *See Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). Alternatively, if requirements (2) and (4) are satisfied, and the balance of equities "tips sharply in the plaintiff's favor," the plaintiff need only raise "serious questions going to the merits" to be entitled to injunctive relief. *Id.* at 1134–35 (holding that this formulation of the Ninth Circuit's sliding scale test survives *Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008)).

OPC brought this suit under PACA, 7 U.S.C. §§ 499a–499t, which establishes a nonsegregated trust in which a produce dealer holds produce-related assets in trust as a fiduciary until full payment is made to the produce seller. *Middle Mountain Land & Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220, 1223-24 (9th Cir. 2002). The trust automatically arises in favor of a produce seller upon delivery of produce and is for the benefit of all unpaid suppliers or sellers involved in the transaction until full payment of the sums owing has been received. *Id.* at 1224. PACA was intended "to increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received by them." *Id*.

OPC's moving papers show that it fits within the category of produce suppliers that PACA was intended to protect, and an injunction would be within the public interest. Moreover, the balance of equities favors OPC because it has received very little payment ($440,000.00) in proportion to the overall value of the perishable agricultural goods it has supplied ($2,418,322.30) while Seven Stars has presumably been able to sell the produce and receive its return.

The court next turns to whether OPC is (1) likely to prevail on the merits and (2) is likely to suffer irreparable harm if the TRO is not issued. The record reveals that Seven Stars likely is dissipating the sales proceeds it received from OPC's produce. At least one of Seven Stars' checks to OPC has bounced, Seven Stars has refused to pay or commit to pay despite months of demands, and Seven Stars breached a settlement agreement that it entered into with OPC for the express purpose of avoiding the filing of the present motion by failing to timely make a $400,000.00 payment to OPC. In

ORDER- 5

addition, this is at least the second PACA action filed against Seven Stars within approximately one month. Based on this evidence, it appears that Seven Stars is suffering financial difficulty and using the proceeds from selling OPC's produce for purposes other than repaying OPC. Given this, it is likely that OPC will suffer irreparable harm if the TRO is not issued and the funds are not sequestered in a trust account. *See Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 139 (3rd Cir. 2000) (holding in a PACA case that once the sales proceeds are "dissipated, it is almost impossible for a beneficiary to obtain recovery"). In addition, based on the foregoing facts, the court finds that OPC is likely to prevail on the merits of its PACA claim.

Thus, OPC has met all the requirements for injunctive relief set forth in *Cottrell* and Federal Rule of Civil Procedure 65(b), as discussed above. Because this is a motion for a TRO, this decision was rendered with less than a full record and full argument, and so the findings in this decision are subject to modification. The court simply is holding here that OPC has met the threshold requirements for issuance of a TRO. The Court expresses no opinion on whether a preliminary injunction is appropriate.

Seven Stars has filed an opposition to OPC's motion for a TRO in which Seven Stars expresses concern that any TRO the court grants should not "go[] beyond the scope of the trust authorized by statute." (Resp. (Dkt. # 6) at 2.) The court is concerned about the scope of the TRO proposed by OPC. OPC seeks to prevent Seven Stars from making any payments to anyone until it pays OPC. In other words, OPC proposes placing a statutory trust on all the proceeds of Seven Stars. Although the breadth of such a trust is

extensive, that is precisely the intent behind PACA, as indicated by the following statutory language:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e.  The TRO, however, should not extend to assets outside the trust.  *See Osborno v. Fong*, No. C 11–0302 SBA, 2011 WL 577415, at *1 (N.D. Cal. Feb. 9, 2011) ("Upon an appropriate showing, the Court may enter a preliminary injunction and freeze the PACA trust assets held in trust by the defendant and prevent payment of these assets to anyone other than the plaintiff.") (citing *Inn Foods, Inc. v. Fong, LLC*, No. C 07–649 SI, 2007 WL 2769849, at *1 (N.D. Cal. Sept. 21, 2007)).  Accordingly, the court will craft the TRO is such a manner as to allow OPC to otherwise use funds, but only those that it can demonstrate to the court are not within the PACA trust.

In addition, Mr. Maberry contends that although it is true that PACA liability can extend beyond the direct buyer to a shareholder or member of the buyer, an individual is only secondarily liable if the principle purchaser is unable to pay.  (*See* Resp. at 2-3.)  Moreover, Mr. Maberry asserts that he is only personally liable if he has failed to preserve the trust.  (*Id.* at 3.)

The court agrees that "individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their

fiduciary duty to preserve those assets, may be held personally liable under [PACA]." *Sunkist Growers v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997). Thus, in order to prevail against Mr. Maberry personally, OPC must demonstrate that (1) Seven Stars' assets are insufficient to satisfy the liability, (2) Mr. Maberry controlled PACA trust assets, and (3) Mr. Maberry breached his fiduciary duty to preserve those assets. *See Wahluke Produce, Inc. v. Guerra Marketing Inter'l, Inc.*, No. 1:11–cv–1981 LJO–BAM, 2012 WL 1601687, at *3 (E.D. Cal. May 7, 2012). Based on the facts described above, the court is persuaded that OPC is likely to succeed in demonstrating that Seven Stars' assets are insufficient to satisfy its liability to OPC, that Mr. Maberry controlled PACA trust assets, and that Mr. Maberry breached his fiduciary duty to preserve those assets. Accordingly, the court finds that OPC is likely to succeed on the merits of its claim against Mr. Maberry personally, and the court will issue the TRO against both Seven Stars and Mr. Maberry personally.

Finally, OPC seeks to waive the bond, but Federal Rule of Civil Procedure 65(c) contains no exception for the bond requirement. Thus, the Court will require a bond.

## IV. CONCLUSION

Having found that the factors for a TRO set forth in *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011), have been met, and in accordance with the forgoing memorandum decision, the court hereby GRANTS OPC's motion for a TRO (Dkt. # 8).

NOW THEREFORE IT IS HEREBY ORDERED, that Mr. Maberry and Seven Stars, and their customers, agents, officers, subsidiaries, assigns, and banking institutions,

shall not alienate, dissipate, pay over, or assign any assets of Mr. Maberry or Seven Stars or their subsidiaries or related companies except for payment to OPC until further order of this court or until Mr. Maberry and/or Seven Stars pay OPC the sum of $1,978,322.30 by cashiers check or certified check, at which time this Order will be dissolved.  Under 7 U.S.C. § 499e(c)(2) of PACA, the assets subject to this Order include all of the assets of Seven Stars and Mr. Maberry, including but not limited to any and all bank accounts at any and all financial institutions, unless Mr. Maberry and/or Seven Stars can prove to this court that a particular asset is not (1) derived from perishable agricultural commodities, (2) other products derived from perishable agricultural commodities, or (3) receivables or proceeds from the sale of such commodities or products.

IT IS FURTHER ORDERED that in the event Seven Stars Fruit and/or Mr. Maberry fail to pay OPC the sum of $1,978,322.30 by cashiers or certified check within two (2) business days of service of this Order, then Mr. Maberry and Seven Stars shall file with this court, with a copy to Plaintiff's counsel, an accounting that identifies all of their assets, liabilities, and each account receivable of Seven Stars signed under penalty of perjury; and that Mr. Maberry and Seven Stars shall also supply to Plaintiff's counsel, within five (5) days of the date of this Order, any and all documents in connection with the assets and liabilities of Seven Stars and its related and subsidiary companies, including, but not limited to, the most recent balance sheets, profit/loss statements, accounts receivable reports, accounts payable reports, accounts paid records, and income tax returns.

1   IT IS FURTHER ORDERED that this TRO shall remain in effect for 14 days as

2   permitted by Rule 65(b)(2), and shall therefore expire on July 2, 2012.

3   IT IS FURTHER ORDERED that a hearing shall be held on OPC's motion for a

4   preliminary injunction on July 2, 2012, at 10:30 a.m. in the Federal Courthouse in Seattle,

5   Washington.

6   IT IS FURTHER ORDERED that Seven Stars and Mr. Maberry shall file a

7   response to Plaintiff's motion for a preliminary injunction on or before June 25, 2012,

8   and that Plaintiff shall file a reply brief on or before June 29, 2012.

9   IT IS FURTHER ORDERED that OPC immediately submit a bond pursuant to

10  Federal Rule of Civil Procedure 65(c) in the sum of $5,000.00. OPC may post its bond in

11  cash into the registry of the court.

12  Dated this 18th day of June, 2012.

13

14  _____

        JAMES L. ROBART
15      United States District Judge

16

17

18

19

20

21

22

ORDER- 10