UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OREGON POTATO COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SEVEN STARS FRUIT COMPANY, LLC, et al.,<br><br>Defendants. | CASE NO. C12-0931JLR<br><br>ORDER GRANTING IN PART AND DENYING IN PART OREGON POTATO COMPANY'S MOTION FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

Before the court is Plaintiff Oregon Potato Company's ("OPC") motion for summary judgment under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.*, against Defendant Seven Stars Fruit Company, LLC ("Seven Stars") and its sole and managing member, Defendant Monte Maberry (Dkt. 25). The court has considered the motion, all submissions filed in support and opposition thereto,

ORDER- 1

the balance of the record, and the applicable law. Being fully advised, the court GRANTS in part and DENIES in part OPC's motion.[1]

## II. BACKGROUND

OPC is in the business of selling and shipping agricultural commodities throughout the United States and internationally. (Compl. (Dkt. # 1) ¶ 2.1; Answer (Dkt. # 21) ¶ 2.1 (admitting allegation based on information and belief).) Between November 2011 and May 2012, OPC sold and delivered perishable agricultural commodities, namely, blueberries and raspberries, to Seven Stars, shipping the berries according to Seven Star's instructions either to Seven Stars' cold storage in Lynden, Washington (where Seven Stars is headquartered) or to specific customers designated by Seven Stars. (Compl. ¶ 2.4; Answer ¶ 2.4; 6/6/12 Evens Decl. (Dkt. # 5-1) ¶ 3.) During this period of time, OPC asserts that it shipped a total of $2,418,322.30 worth of blueberries and raspberries to Seven Stars. (6/6/12 Evens Decl. ¶ 3.) Some of the berries that OPC shipped to Seven Stars were purchased from South America. (6/6/12 Evens Decl. ¶ 3.)

OPC sent invoices to Seven Stars for each shipment of berries at issue. (*Id.* ¶ 4, Ex. A.) OPC has provided bills of lading that correspond to most, but not all, of the invoices.[2] (*See id.* Ex. A.) The court has identified a corresponding bill of lading for the

---

[1] No party has requested oral argument, and the court deems this motion appropriate for disposition without it.

[2] OPC provided copies of the various invoices at issue here, along with most of the corresponding bills of lading, in one lump exhibit. (*See* 6/6/12 Evens Decl. Ex. A.) In the

following invoices:  1137844, 1138308, 1139042, 1239165, 1239118, 1239267, 1239342, 1239343, 1239041, 1239972, and 1239973.  (*See id*.)  The court has not identified any corresponding bill of lading for the following invoices:  1240327 (for $132.30) and 1242830 (for $815,518.00.)  (*See id.*)  In addition, although it appears that OPC has submitted a bill of lading intended to correspond to invoice number 1138730, there are peculiarities about the bill of lading that no party has explained.  Specifically, invoice number 1138730 indicates that the specified berries are to be "ship[ped] to" Star Frozen Foods in Port Ludlow.  (*Id.* Ex. A at 37.)  However, the apparent corresponding bill of lading indicates that the berries were shipped to Fruitade International in Toronto, Canada.  (*Id.* at 38.)  The court could find no explanation for this apparent discrepancy in the factual record or in the parties' briefing.[3]

      Defendants have admitted that Seven Stars "has not paid all amounts due and owing on the ordered products."  (Answer ¶ 2.4.)  When OPC did not receive payment with respect to the foregoing invoices, Ms. Diana Evens, the accounts receivables manager of OPC, Mr. Frank Tiegs, the President of OPC, and others began contacting Mr. Maberry, the owner and manager of Seven Stars.  (6/6/12 Evens Decl. ¶ 5; 6/6/12 Tiegs Decl. (Dkt. # 5-2) ¶¶ 3-5.)  Mr. Maberry assured OPC staff that payment from

---

future, the court expects the parties to provide tabs, dividers, or some other form of organization that will enable it to more easily identify and locate pertinent documents and evidence.

[3] The invoices at issue specify that payment is to be made within 30 days of the "B/L Date," or the bill of lading date.  (6/6/12 Evens Decl. ¶ 4, Ex. A.)  The invoices with corresponding bills of lading bear the same date as the corresponding bill of lading.  (*See id.*)

ORDER- 3

Seven Stars would be forthcoming.  (6/6/12 Evens Decl. ¶ 5; 6/6/12 Tiegs Decl. ¶ 5.) OPC contacted some of Seven Stars' customers, who advised OPC that they paid for the delivery of berries shipped to them from OPC on Seven Stars' account.  (6/6/12 Evens Decl. ¶ 9.)

On May 31, 2012, OPC initiated the present action against Seven Stars and Mr. Maberry under PACA, 7 U.S.C. § 499e(c)(5).  (*See generally* Compl.)  On June 18, 2012, the court issued a temporary restraining order against both Seven Stars and Mr. Maberry. (*See* 6/18/12 Order (Dkt. # 10).)  On July 11, 2012, the court converted its temporary restraining order into a preliminary injunction.  (*See* 7/11/12 Order (Dkt. # 16).)

On November 16, 2012, OPC moved for summary judgment with respect to its PACA and other claims.  (*See generally* Mot.)  Over time, OPC has received partial payments from Seven Stars, totaling at least $713,612.78, with respect to the overdue invoices.  (*See* 6/6/12 Evens Decl. ¶ 3; 6/6/12 Tiegs Decl. ¶ 6; 11/16/12 Evens Decl. (Dkt. # 25-1) ¶ 4, Ex. at 2.)  In addition, OPC has credited Seven Stars for $157,677.00 as a result of the return of some frozen blueberries and $105,784.87 as a partial settlement with Seven Stars with respect to some frozen raspberry puree.  (*See* 11/16/12 Evens Decl. ¶ 4, Ex.; *see generally* Tippett Decl. (Dkt. # 25-2).)  As a result of the foregoing partial payments and other adjustments, OPC stated in its motion for summary judgment that Seven Stars owed a total of $1,441,337.65 for the shipments of perishable agricultural goods at issue.  (Mot. at 3; 11/16/12 Evens Decl. ¶ 5.)

In addition to its PACA claim, OPC also asserted a breach of contract claim. (Mot. at 10.)  The terms of OPC's invoices provide for 1.5% interest on unpaid balances

and reasonable attorney's fees for collection costs.  (6/6/12 Evens Decl. Ex. A at 6-7.) Accordingly, OPC sought the recovery of $256,948.72 in interest.  (Mot. at 10.)  In addition, OPC sought $42,061.30 in attorney's fees.  (*Id.* at 12; *see generally* 11/15/12 BergDahl Decl. (Dkt. # 25-3); Cameron Decl. (Dkt. # 25-4).)

In response to OPC's motion for summary judgment, Defendants do not dispute that they owe a significant sum to OPC.  (*See* Answer ¶ 2.4 ("Defendants admit that . . . Defendant Seven Stars has not paid all amounts due and owing on the ordered products.").)  Rather, Defendants assert that "there is a material issue of fact . . . on how much product was shipped by Plaintiff, and therefore how much is owed on [OPC's] PACA and breach of contract claims."  (Resp. (Dkt. # 26) at 2.)  First, Defendants assert that there are a number billing errors with respect to OPC's invoices.  For example, Defendants assert that OPC failed to credit Seven Stars for a recent payment of $12,187.13.  (*Id.*)  Defendants also assert that there is a total discrepancy of $65,260.00 with respect to Invoice Nos. 1139042 ($31,590.00), 1138730 ($29,970.00), and 1239165 ($3,700.00) because OPC charged Seven Stars based on the "gross weight" of the shipment rather than the "net weight."  (*Id.* at 3; 12/7/12 Maberry Decl. (Dkt. # 27) ¶ 5.) In addition, Defendants assert that there is an overcharge of $62,715.00 on Invoice No. 1239165 due to a re-pack of the product which usually results in a loss of five to ten percent (5-10%) of the product.  (Resp. at 4; 12/7/12 Maberry Decl. ¶ 6.)

Second, Defendants point out that OPC failed to provide a "corresponding bill of lading or other confirming documents" with respect to Invoice No. 1242830 that would demonstrate that 858,440 pounds of raspberries invoiced at $815,518.00 were actually

ORDER- 5

shipped or received by Seven Stars.  (Resp. at 2-3.)  Although Defendants acknowledge that the quantity they received "is probably close," they assert that OPC's number is not correct.  (*Id.* at 3.)  Mr. Maberry provides testimony that "[t]he total quantity listed on the invoice does not seem consistent with the quantity associated with this order because it is not consistent with what would be transported in containers."  (12/7/12 Maberry Decl. ¶ 4.)  Although he "believe[s] that the pounds referenced in the invoice are in the ballpark," he does not believe the invoice "is an accurate representation of the actual number of pounds of raspberries delivered."  (*Id.*)

Finally, Defendants seek an opportunity to complete discovery prior to the court's consideration of OPC's motion under Federal Rule of Civil Procedure 56(d).  (Resp. at 4.)  Mr. Maberry testifies that "[i]n order . . . to confirm the accuracy of the invoices provided by OPC," he "need[s] to get a copy of the Sales Memos and the delivery information on the raspberries."  (12/7/12 Maberry Decl. ¶ 7.)  He also asserts that he has "not been provided with all the shipping records related to the raspberry product." (*Id.*)  Thus, he asserts that he cannot ascertain the necessary facts concerning the invoice discrepancies referenced above or with respect to the delivery of the raspberries "without completing discovery."  (*Id.*)  Defendants served OPC with discovery requests on December 10, 2012.  (*See* Reply at 7.)  The discovery cutoff is not until March 11, 2013.  (*See* Min. Ord. (Dkt. # 24) at 1.)

In its reply, OPC denies that there is any discrepancy with respect to the delivery of the 858,440 pounds of raspberries (12/13/12 Bergdahl Decl. (Dkt. # 30-1) ¶ 3), but admits that "Maberry is correct in that some of the invoices have minor errors."  (Reply

1  (Dkt. # 30) at 1.)  In recognition of those "minor" errors, OPC issued a credit

2  memorandum for Invoice No. 1139042 in the amount of $31,833.00 (12/13/12 Bergdahl

3  Decl. ¶ 4 & n.2), which is slightly in excess of the amount that Defendants asserted was

4  overcharged due to the use of "gross weight" on the shipment.  OPC also issued a credit

5  memorandum for Invoice No. 1138730 in the amount of $30,213.00 (*id.* ¶ 4 & n.1),

6  which again is slightly more than the overcharge claimed by Defendants.  OPC, however,

7  asserts that there is no overcharge due to the use of "gross weight" with respect to Invoice

8  No. 1239165.  (*Id.* ¶ 4.)  Nevertheless, OPC acknowledges that "Mr. Maberry is correct

9  that '33,900 pounds [of . . . Blueberries] is [sic] still in OPC's possession at the cold

10  storage' under [I]nvoice No. 1239165." (*Id.* ¶ 5.)  Accordingly, OPC issued another

11  credit memorandum for $62,715.00 with respect to this invoice (*id.*), which is the precise

12  amount of the overcharge asserted by Defendants.   Finally, although OPC has submitted

13  no evidence in this regard, it represents in its reply brief that it issued an additional credit

14  memorandum in the amount of $13,515.00 to Seven Stars.  (Reply at 3.)

15      Accordingly, following all of the adjustments in OPC's reply memorandum and

16  accompanying declarations, OPC now seeks a judgment under PACA of $1,303,016.65

17  (Reply at 8), which represents a downward adjustment of $138,321.00 from the amount

18  originally asserted in its motion.  In addition, OPC has also adjusted its demand for

19  interest down from $256,948.72 to $234,544.50, but increased its demand for attorney's

20  fees from $24,061.30 to $47,066.30.  (Reply at 8; 12/14/12 Cameron Decl. (Dkt. # 30-2).)

21  //

22  //

ORDER- 7

### III. ANALYSIS

#### A. Standards for Summary Judgment

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment. *Galen*, 477 F.3d at 658.

#### B. PACA Trust

"PACA was enacted in 1930 to 'suppress unfair and fraudulent practices in the marketing of fruits and vegetables in interstate and foreign commerce' and 'provides a code of fair play . . . and aid to [agricultural] traders in enforcing their contracts.'" *C & G Farms, Inc. v. Capstone Business Credit, LLC*, No. CV F 09–0032 LJO SKO, 2011 WL 677487, at *5 (E.D. Cal. Feb. 17, 2011) (quoting 7 C.F.R. Part 46, Fed.Reg. 45735, 45737 (Nov. 20, 1984)) (alterations in original). Under PACA, commission merchants, dealers, and brokers hold produce and any receivables from the sale of produce in trust for the benefit of unpaid produce suppliers until full payment has been made to the supplier. 7 U.S.C. § 499e(c)(2).

Under section 499e(c), perishable agricultural commodities, inventories of food or other derivative products, and any receivables or proceeds from the sale of such commodities or products, are to be held in "a non-segregated floating trust" for the benefit of unpaid sellers. *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 136 (3rd Cir. 2000). By the express language of PACA, the trust applies to the receivables generated by the sale of commodities, just as it does to the commodities themselves. *Boulder Fruit Exp. & Heger Organic Farm Sales v. Transp. Factoring, Inc.*, 251 F.3d 1268, 1270-71 (9th Cir. 2001).

A claimant must establish five elements to recover for unpaid accounts under the PACA statutory trust provisions: (1) the produce in question are "perishable agricultural commodities"; (2) the produce were received by a commission merchant, dealer, or broker; (3) the transaction occurred in contemplation of interstate or foreign commerce; (4) the purchaser failed to pay fully and promptly; and (5) the seller preserved its trust rights by giving proper notice to the buyer.[4] *See* 7 U.S.C. § 499e; *see also Weeks v. Fresh-Pic Produce Co., Inc.*, No. 08cv02058 BTM (WVG), 2012 WL 1815648, at *1 (S.D. Cal. May 17, 2012) (citing *C & G Farms, Inc. v. Capstone Bus. Credit, LLC*, No. CV F 09–0032, 2011 WL 677487, at *5–8 (E.D. Cal. Feb 17, 2011)); *Wahluke Produce,*

---

[4] "Under PACA, notice may be provided in one of two forms: (1) written notice within thirty calendar days after payment was due, 7 U.S.C. § 499e(c)(3) ('the written payment method'), or (2) a printed statement on its regular invoices, 7 U.S.C. § 499e(c)(4) ('the invoice method')." *Belleza Fruit, Inc. v. Suffolk Banana Co, Inc.*, No. CV-12-3033(SJF)(WDW), 2012 WL 2675066, at *7 (E.D.N.Y. July 5, 2012) (quoting *DiMare Homestead, Inc. v. Alphas Co. of N.Y.*, No. 09 Civ. 6644, 2011 WL 2988629, at *3 (S.D.N.Y. July 22, 2011)); *see also* 7 C.F.R. § 46.46(f).

ORDER- 9

*Inc. v. Guerra Mktg. Int'l, Inc.*, No. 1:11–cv–1981 LJO–BAM, 2012 WL 1601876, at *3 (E.D. Cal. May 7, 2012).

There is no dispute with respect to several of these elements. No party disputes the first element—that the blueberries and raspberries at issue constitute "perishable agricultural commodities" under PACA.[5] Further, there is no genuine issue of material fact concerning the last element—that OPC preserved its trust rights by including statutory language referencing the trust on its invoices. OPC submitted competent evidence that its invoices contained the required statutory language (*see generally* 6/6/12 Evens Decl. Ex. A), and Defendants have produced no evidence or raised any argument disputing it.

There is also no dispute with respect to the third element—whether the transactions occurred in contemplation of interstate or foreign commerce. Under PACA, a transaction implicates "interstate or foreign commerce" if commodities transported pursuant to that transaction originate in one state (or foreign country) with the expectation that they will end their transit, after purchase, in another. 7 U.S.C. § 499a(b)(8). This language is deliberately broad, and a PACA plaintiff does not have to prove that the produce actually crossed state lines. *C & G Farms*, 2011 WL 677487, at *8 (citing *In re Southland + Keystone*, 132 B.R. 632, 640-41 (9th Cir. B.A.P. 1991)).

---

[5] Defendants also have admitted that Seven Stars traded in perishable agricultural products and was properly licensed or subject to licensing. (*See* Compl. ¶ 2.2 (". . . Seven Stars is and was at all time relevant engaged in the business of purchasing and selling perishable agricultural commodities, and was licensed or subject to licensure by the USDA [United States Department of Agriculture] as a dealer of perishable agricultural commodities."); Answer ¶ 2.2 ("Defendants admit paragraph 2.2").)

The court in *In re Southland + Keystone* reasoned that PACA covered all transactions between a debtor and a seller where "the commodities involved are the type typically sold in interstate commerce" and where the seller involved is "the type that Congress intended to protect by implementing PACA." 132 B.R. at 641. OPC has provided testimony that at least some of the berries at issue originated in South America (6/6/12 Evens Decl. ¶ 3), and Defendants have not disputed it. OPC's evidence is sufficient to meet this third element.

The elements that are at issue are two and four—delivery and failure to pay. Defendants have admitted these elements, but only up to a point. They admit that "between November 2011 and May 2012, [OPC] sold and delivered some of the perishable agricultural commodities order by . . . Seven Stars and that [OPC] has not paid all amounts due and owing on the ordered products." (Answer ¶ 2.4; *see also id.* ¶ 5.1 (Defendants admit that . . . Seven Stars has not paid all amounts alleged by Plaintiff to be due and owning for product sold and delivered, and that at least some payments are past due."); *see also id.* ¶ 3.1.) Defendants also "admit that some of the product purchased from [OPC] has been sold, and receipts from such resales disbursed." (*Id.* ¶ 2.8; *see also id.* ¶¶ 2.9, 5.2.)

Yet, despite these general admissions, Defendants have provided evidence disputing (1) the charges contained in several of the invoices (specifically, Invoices Nos. 1139042, 1138730, and 1239165) (Maberry Decl. ¶¶ 5-6), (2) the amount of berries delivered under another invoice (*id.* ¶ 4), and (3) the proper crediting of Seven Stars' account with regard to certain payments (*see* Resp. at 2; Reply at 3). Thus, although all

of the elements with respect to breach of the PACA trust have been met, what remains is a genuine issue of material fact with respect to the quantification of OPC's damages.

Significantly, OPC has admitted that Seven Stars was correct with respect to a significant number (although not all) of the errors that Seven Stars identified in its responsive memorandum and accompanying declaration, and OPC adjusted some of the amounts it was demanding in its motion for summary judgment accordingly. (*See generally* Reply.) Thus, Seven Stars has raised a genuine issue of material fact with respect to those items that remain in dispute, and has also cast doubt on the remaining accounting and documentation provided by OPC with respect to quantification of both delivery and payment. Although Seven Stars has admitted to the delivery of some amount of perishable agricultural products and its failure to pay for some portion thereof, the court declines to quantify these amounts based on the record described above.

Moreover, Defendants have not only identified significant accounting errors in the materials submitted by OPC, they have requested that they be permitted to complete discovery before they are required to fully respond to OPC's motion pursuant to Federal Rule of Civil Procedure 56(d). (Resp. at 4 ("[T]he Motion for Summary Judgment should be continued to allow for this reasonably necessary discovery, pursuant to Fed. R. Civ. P. 56(d)."); Maberry Decl. ¶ 7 ("I cannot present these facts without completing discovery to OPC because the Sales Memos that I had were on a computer that has crashed, and OPC has not provided me with another copy despite numerous requests.").)

Under Federal Rule of Civil Procedure 56(d), if the nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to

1  justify its opposition, the court may: (1) defer considering the motion or deny it; (2)
2  allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other
3  appropriate order." Fed. R. Civ. P. 56(d). Relief may be denied, however, if the moving
4  party has not acted diligently in pursuing discovery before summary judgment. *Meaux v.*
5  *Nw Airlines, Inc.*, No. 11-15480, 2012 WL 3091042, at *1 (9th Cir. July 31, 2012)
6  (unpublished) (citing *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,
7  525 F.3d 822, 827-28 (9th Cir. 2008)). The court agrees that Defendants are entitled to
8  discovery under Rule 56(d). Even without the requested discovery, Defendants have
9  identified numerous errors in OPC's accounting and records. Based on this track record,
10 additional discovery is warranted to ensure no further errors and that the court has a full
11 record on which to make its ruling.

12       Further, there is no evidence of delay on the part of Defendants with respect to
13 discovery. The discovery cutoff does not occur until March 11, 2013. (Min. Ord. at 1.)
14 Defendants served their discovery requests upon OPC more than three months in advance
15 of this deadline. (Reply at 7.) Based on the record before the court, Defendants are
16 entitled to complete the discovery they have issued prior to responding to OPC's motion
17 with respect to its PACA trust claim. Accordingly, the court DENIES this portion of
18 OPC's motion for summary judgment, but without prejudice to timely re-filing following
19 completion of the discovery that Defendants have issued.

20    **C.  Breach of Contract**

21       OPC also asserts a claim for breach of contract and seeks summary judgment with
22 respect to this claim as well. (Mot. at 10.) The court declines to rule on this claim for the

ORDER- 13

same reasons it declines to rule on OPC's PACA claim. In addition, for the same reasons that Defendants are entitled to complete their outstanding discovery under Rule 56(d) with respect to OPC's PACA claim, Defendants are entitled to complete their outstanding discovery with respect to this claim as well. Although the court DENIES OPC's motion for summary judgment with respect to its claim for breach of contract, the court's denial is without prejudice to timely re-filing following completion of Defendants' Rule 56(d) discovery.[6]

### D. Mr. Maberry's Personal Liability

OPC also seeks a ruling on summary judgment that Mr. Maberry may be held secondarily liable for Seven Stars' breach of the PACA trust because he controlled Seven Stars. (*See* Mot. at 7-10.) Defendants have not requested any additional discovery with respect to the issue of Mr. Maberry's personal liability, and the court does not find that additional discovery is required under Rule 56(d). Accordingly, the court will consider this aspect of OPC's motion.

As noted above, there is no dispute that Seven Stars has breached its PACA trust. Indeed, Defendants admit that OPC "sold and delivered some of the perishable agricultural commodities ordered by . . . Seven Stars and that . . . Seven Stars has not paid all amounts due and owing on the ordered products." (Answer ¶ 2.4.) The only dispute

---

[6] The court also defers ruling on OPC's request for interest and attorney's fees (*see* Mot. at 10-13) until such time as OPC re-files its motion for summary judgment with respect to its breach of contract or PACA claims or the matter comes to trial. Finally, OPC also seeks an injunction. (Mot. at 13-14.) The court will also defer ruling on this portion of OPC's motion, but notes that the preliminary injunction remains in place. (*See* 7/11/12 Order.)

that remains is with respect to the exact quantity of berries delivered and the amount of unpaid invoices. (*See supra* § III.B.) The issue OPC asks the court to resolve is whether Mr. Maberry may be held secondarily liable for Seven Stars' breach of the trust. (Mot. at 7-10.)

In *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280 (9th Cir. 1997), the Ninth Circuit found that individuals associated with corporate defendants may be liable under a PACA trust theory. *Id.* at 282-83. After surveying decisions concerning individual liability under a PACA trust claim, the Court stated:

> The unanimous conclusion of the cases is that PACA liability attaches first to the licensed seller of perishable agricultural commodities. If the seller's assets are insufficient to satisfy the liability, others may be found secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust.
>
> We agree that individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under the Act.

*Id.* at 283 (citations and internal quotations omitted). A court considering the liability of an allegedly controlling person may look at the closely-held nature of the corporation, the person's active management role, and any evidence of the person acting for the corporation. *Id.*

There is no dispute that Mr. Maberry is the managing and only member of Seven Stars, which is a limited liability company. (7/16/12 Maberry Decl. (Dkt. # 17) ¶ 1 at 1; *see* Answer ¶ 2.4.) In fact, Mr. Maberry's signature is the only one that appears on any check from Seven Stars that was submitted into evidence by his attorney as a part of

ORDER- 15

Seven Stars' 2012 bank account records. (*See* Lee Aff. (Dkt. # 28) Ex. A at 3, 6, 9, 13, 16, 19.) There is no evidence that any other person, other than Mr. Maberry, directed the actions or decisions of Seven Stars. Although the Ninth Circuit's decision in *Sunkist Growers* dealt specifically with a corporation rather than a limited liability company, the court finds no reasoned basis for distinguishing its rationale here.

Based on out-of-circuit authority, Defendants nevertheless urge the court not to impose secondary personal liability on Mr. Maberry for dissipation of the PACA trust assets. (Resp. at 5.) Given the Ninth Circuit's ruling in *Sunkist Growers*, however, Defendants acknowledge that such an outcome "would be difficult." (*Id.* at 6.) The court agrees. Based on the record of Mr. Maberry's exclusive control of Seven Stars, *Sunkist Growers* compels the court to rule that Mr. Maberry is secondarily liable for Seven Stars' breach of the PACA trust.

### IV. CONCLUSION

Based on the foregoing, the court GRANTS in part and DENIES in part OPC's motion for summary judgment (Dkt. # 25). Although undisputed evidence establishes that Seven Stars breached the PACA trust, both the quantity of berries delivered and the amount of unpaid invoices remains in dispute. Further, Defendants have established that they are entitled to discovery on these issues under Federal Rule of Evidence 56(d). Accordingly, the court DENIES OPC's motion for summary judgment with respect to its PACA trust and breach of contract claims, but without prejudice to timely re-filing once Defendants' Rule 56(d) discovery is complete. The court, however, GRANTS OPC's

1 motion with respect to the secondary liability of Mr. Maberry for Seven Stars' breach of

2 the PACA trust as discussed above.

3       Dated this 18th day of January, 2013.

JAMES L. ROBART
United States District Judge